No. 3339.

(Court of Appeal, Parish of Orleans.)

## SUCCESSION OF JOHN HENRY SCHULTE.

## MRS. WIDOW JOHN LAMBERT AND JOHN HENRY LAMBERT, Appellants.

1. A claim for menial services to a deceased during his lifetime by his lessee, who regularly paid her monthly rent for years and up to her lessor's death, must be established clearly and with certainty.

2. Evidence of admissions by the deceased, or in his loose conversations, implying his intention to provide in his will, which was either never written or found—for his lessee is of the weakest character and scarcely worthy of belief. 1 Hen. pg. 518, Nos. 3, 4 and 7.

3. Those menial services truly rendered to deceased in his lifetime by the lesse's son, who fixed their value at $5 per month, and embracing a number of years, are prescribed, except as to the last year of those services. R. C. C. 3534.

Appeal from Civil District Court, Division C.

J. J. O'Connor, for Plaintiff and Appellants.

E. J. Meral and Hy. Chiapella, for succession, Appellees.

BEAUREGARD, J. By rule—as to which form of proceeding and to save expenses—no objection was raised, the following named parties sought to establish their claims against the above entitled succession for board of, and personal services rendered by them to, the deceased during his life time and up to his demise, viz :

Mrs. John Lambert widow in community and natural tutrix of her minor children and of a married daughter duly assisted by her husband, for 6 years, 4 months and 9 days @ $10 per month, from December 12, 1894, to April 21, 1901 .............$ 763 00

For services by her individually rendered from April 21, 1901, to September 18, 1903, day of his death—1 year, 4 months and 27 days @ $10 ...................  169 00

Total...................$  932 00

And John Hy. Lambert, for personal services
to deceased, taking care of him, sleeping
with him, emptying his night glass, mak-
ing his fires in the morning for 7 years,
9 months and 6 days, @ $5 per month ..$  466  00

Total....................$1,398  00

The deceased, it appears, was an old man stout and healthy near about two months before his death, and was seen up and about by one of his neighbors about four days before he died.

The house where he lived was a double tenement house. He occupied the one side of it; the other side comprising three rooms and a kitchen was rented to Mrs. Lambert. The deceased lost his wife and having no children or near relatives living with him, his agreement with his tenant was that he would receive per month $2 cash, and $5 would constitute the balance of the lease-price, which his Lessee would retain as against her Lessor's one meal a day (his dinner) at her house.

John Hy. Lambert, the Lessee's son, and the Lessor's godson, was, after the death of the former's wife, requested to live with him. The godson was then 16 years of age and remained and slept with his godfather till the latter's death; John Hy. Lambert was then nearly 24 years of age.

No precise date is fixed with certainty, but the godson claims to have rendered to his godfather the services enumerated above.

This does not concord with that part of the evidence which has not been contradicted that the deceased was within a short time before his death, stout and healthy. Mrs. Lambert, during the same period of time that her son was employed, at night principally, and in the evening and early morning in ministering to wants of the deceased, claims that she was also employed at other hours of the day (it would seem and sometimes at the same hours) in a similar mission. She would make his fires; open the door to his milkman and receive the milk for him; give him extra meals on Sunday, i. e., breakfast, when she returned from church; also extra dinners to his washerwoman when she called once in three weeks to clean his house, mend his clothes and do other menial work.

This does not agree with that part of the evidence (and uncontradicted) that deceased, to within four months of his death was a very active man for his age; boiled his own coffee in the morning, bought some two dozen eggs per week, went alone to the grocery in his neighborhood where he bought for cash the eatables he needed.

If the services Mrs. Lambert claims to have rendered the deceased were indeed rendered, they must have been performed at about the time that J. H. Schulte's life was on the vane, that is, within the two months or four months referred to. The deceased had during his life a woman employed by him at $10 a month and as stated above to look to his clothing, house, etc.

71

Whatever services were performed by Mrs. Lambert for him impress the conviction that they were gratuitous and founded on the hope that her lessor, who was well off in earthly goods and received monthly revenues fully exceeding his monthly wants, would in view of her menial attentions provide for her in a will which was never made or found after his death, and she further relied on his kindly expressions of "that will be all right" conveying the meaning as was testified to after his death. But, this must be taken into consideration: Admissions of a deceased person are the weakest kind of evidence and scarcely worthy of belief. 1 Hen. pg. 518, Nos. 7, 3 and 4.

And further, that Mrs. Lambert was the Lessee of the deceased; and that at no time did he relent from accepting his rent from her, viz: $2 cash; and $5 as an off-set to his dinners.

At any rate, there is an uncertainty about any part of Mrs. Lambert's claim which confirms our conviction that the Judge a qua, who saw and heard the witnesses, was fully warranted in rejecting her demand.

In the cases cited by Appellant 48 A., 45 and 47 A. 341, the Court noted as facts the services rendered.

With respect to the J. H. Lambert claim, the Court a qua applied the prescription of one year except as to the last year of the old gentlemen's death. We see no reason to alter the decree. It is therefore ordered that the judgment appealed from is affirmed.